Next case on this morning's docket is Country Casualty Insurance Company v. Maureen Skrabacz. Probably Mr. Subchuck could say this better than I could. In any event, we have Mr. Podeski here for the appellant and we have Mr. Subchuck here for the appellee. And now you may begin, Mr. Podeski. Thank you, Your Honor. Michael and Maureen Skrabacz began being insured by Country Casualty back in June of 2003. They covered both their automobiles and their home. The listed address around the time that they were insured was 409 McCann Lane in Belleville. And again, the policy was renewed at times every six months for the auto policy and drivers changed. They had two teenage daughters that were drivers as well. In August of 2004, Mr. Skrabacz was transferred to Omaha, Nebraska. At that time, he was working for the Union Pacific Railroad and his job was originally based in St. Louis. But there was a change with the railroad and they moved their operations out to Omaha. So then Mr. Skrabacz moved out to Omaha and began working there. But that was not a development that the family really wanted because they were based in southern Illinois. Their friends or family are in southern Illinois. They did not want to move to Omaha. So the thinking was, well, perhaps Michael will be able to transfer to a job in southern Missouri so they would be closer to home. As Mrs. Skrabacz later testified in her deposition, everything was sort of up in the air at this time. The family was going to make a definitive decision as to where they were going to live in the spring of 2005 when their two girls got out of school and then they were going to decide where they were going to live and establish permanent residency in some location. Initially, Mr. Skrabacz did not have a vehicle when he moved out to Omaha in August of 2004. But later on in October of 2004, Mrs. Skrabacz drove out a 2001 Kia Rio for Mr. Skrabacz to use out there in Nebraska. Around that time, she made a phone call to her country agent, Aaron Waymeier. She told Mr. Waymeier that she and the kids were going to stay in Belleville, but Michael was going to be moving and he is in Omaha, Nebraska. Mr. Waymeier said, that's fine. He's still covered. And he was covered, and there's no dispute that Mr. Skrabacz was covered by the country policy at the time of the accident. Like I said, Maureen said, they wanted to leave things the way they were in terms of their insurance until the family made a final decision in the spring of 2005 as to where they were going to live. I have a question, though, Mr. Podesta, about the facts that I didn't quite follow. Apparently then there was a renewal that happened shortly thereafter. I was just about to say that. But then they showed that I guess the car that actually was in Nebraska was shown as still being in Illinois and being driven by a different person than the mister. That's correct. And my question is, who decides that? I mean, obviously she reported something different to the company than what was stated in the policy. So how is it that that policy got rewritten that way? Because that was what the agent agreed to and that's what they wanted. But the agent can say that, in fact, a car is being driven by somebody other than it really is being driven by? Your Honor, fortunately or unfortunately, that happens all the time with insurance. And you'll notice also on all of these, if you look at the policy, every driver is under 10 miles or less per day. And the reason for that is, well, there's a couple of reasons. First, the agent wants to keep the business, obviously, because they're going to get money back when the policy is renewed. The second reason is the insurance, they want to get the discount. And that's why they want to keep everything the way it was, and they got a substantial discount because they got a multi-auto home advantage, they got a multi-car discount, a good driver discount. When they added that 05-4 in January of 05, they got a $619.14 discount. But it seems to me that that almost is in contradiction to what the insurance was trying to do, which was to tell the truth and say that the car's not really here anymore, it's in Nebraska, and by the way, my daughter's not really driving in it anymore, my husband is. Isn't that what happened? The insurer, she says she told the agent that Mr. Skrabec is going to be using the 01 Kia in Nebraska. But the problem, well, there's a practical problem, and I understand what you're saying. The practical problem is this. They wanted to keep their insurance the same, and that's what her testimony is, until they made a final decision in spring of 05 as to where they're going to live. She didn't want to make a change. And the agent said, well, that's fine, we can keep him on the policy. And he was on the policy, and he was covered on the policy. That's why they renewed it in October of 04. The October 04 renewal ran through April of 05. She wanted to keep everything the same because they didn't. He got an apartment in Omaha, but he did nothing to establish Nebraska residency, as I mentioned in the brief. Didn't title the car Nebraska, didn't get a Nebraska license. Tell me if this is accurate. Regardless of who's driving what car, especially when you've got a couple of teenage daughters, as in this case, or sons, I guess, the agents frequently mix up the assigned drivers to cars based upon what will be the cheapest premium. Absolutely. Because they want to keep the business. They want to keep the business. And regardless of whether that's true or not, the company still covers them. Right. And there's no claim here that there was any funny business by the family. Absolutely not. They got exactly what they wanted. I guess my whole point is the company knew what the reality was, that really that car was in Nebraska, and really it was driven by him, and he was living there. Yeah, and he's covered that, too, because it's the company policy that he insured. If somebody moves to another state, the company will continue to insure. They don't just cancel the person. They keep them covered until the policy expires or the insurer gets a new policy in the new state. My point is that they've called and said, we want to do the right thing. I guess we don't know exactly what to do. I'm sure that's why she called. She thought that, hey, I've got to alert the company to this change. And so then from there, it's the company's decision as to how to handle it, correct? Oh, yeah. And she wanted to make sure he had coverage because he wasn't living at home, and he did. And that's, again, he had coverage. But it's coverage the way that the company decides it's coverage. If they had told her, look, he's got to get a new policy through a different agency in Nebraska, he would have done that, correct? But it's not just the company. She wanted to keep things the same as they were. It was their decision as well because, again, they renewed the policy in October of 2004, and as the court observed, the driver was a woman aged between 30 and 64, under 10 miles a day to work. That's a decision that they made. They wanted to keep the coverage. Is there anything in the record? Did she testify that she was aware that that was all wrong and not what the reality was, but she wanted it that way? Not in detail, Judge. You're extrapolating all that from her statement that we want to keep things the same. And the record of what was done, the policy record of what was done, because there's a record of the deck sheets and the bills and so on and so forth, she said she wanted to keep the insurance the same until they made a final decision in the spring of 2005. I understand. But nobody pinned her down to any testimony that, did you understand that this policy provided that somebody else would be driving that car and it was going to be... No, no. Nobody pinned her down to that? No, I didn't. We don't even know if she even knew how it was assigned in the policy, other than her saying, well, I want to keep it the same. We want to keep our same insurance, is what she said. Well, Your Honor, I understand what you're saying. The answer is no, nobody pinned her down. But, I mean, they get a new car in 2005. I mean, this isn't, you know, country, I guess one inference is, you know, Country Mutual can somehow create this new vehicle, charge them a different premium, and come out with a deck sheet. I kind of doubt that's what happened. I think they decided to buy a new car in January of 2005, this Ford Focus. They listed Michael as the driver because they're going to get the lowest amount of premium, and they got the discount for it. What I'm saying, Judge, is they went ahead, just like she said, they wanted to renew the policy they did in October of 2004, ran through April of 2005. They get a new car January of 2005. It's listed on the policy. Michael is the principal driver. And, again, there's a reason for that, because of the discounts. They got $531.90 for the Kia, $619.14 for the 05 Ford, because of that auto home advantage, multi-car, good driver. Those were all discounts that they got to keep their insurance the same, right? And, again, that's not something unusual. What was unusual, unfortunately, in this case, is that the trial court applied Nebraska law to the accident, to the policy. The trial court said, well, Country knows that this 01 Kia is in Omaha. The accident happened in Omaha, and that's the end of the story. So we're applying Nebraska law. The policy, or the 01 Kia, was listed on the policy as being driven by a female, age 30 to 64, driving to work under 10 miles. That's what they listed in October of 2004 when they renewed the policy, all right? The insurance chose, the Scrabage chose to keep their insurance the same. When they got a new car in January of 2005, they chose to list it under the Illinois policy, just like their homeowners, like their other vehicles were listed in Illinois. But you know what? You keep going back and forth, Mr. Podeski, and that's the reason why I brought it up about, I mean, obviously we all apply somewhat our experience, but it generally is the agent that knows what car combination is going to get the cheapest rate. And all I'm saying is, is that she did tell him who actually was driving what car and where it would be. And somehow it got assigned differently, and you're saying that it was her choice in that, and that? She said she wanted to keep the insurance the same. The country doesn't write in Nebraska, Judge. It's either we don't cover him or he's going to be covered. And the man was covered. The problem here is Nebraska has a completely different underinsured statute than Illinois. Like we all know, Illinois, you've got to fill the gap between what the torque freezer had and what your UIM coverage is. But you're trying to say that the actual car that had the accident in Nebraska was on the policy as not even being in Nebraska when all along your company knew it was in Nebraska, even though it says on the policy it wasn't. And you're then switching back and saying that was because she wanted to keep the policy the same. And what I'm saying is? Yeah, because she was covering the premium for Illinois, and she got a discount to keep it on the policy in Illinois. But either that was A-okay to do or it wasn't. That's what she wanted, and that's what they got. And it was okay to do it. It was legal and okay by the company to do it, even though the car was in another state. Because they were going to make a decision in April. But, I mean, it is okay that the car was in another state, and even though the policy is written a different way. That was okay. That's what they did. Okay. Just to make another point here. I mean, this is not a situation where you have an independent agent. Country companies' agents are employees of country companies. That's right. And so they can bind country companies by their actions, whereas an independent agent is considered to be the agent of the insured, right? Right. Okay. So what happened was, like I was saying, this-well, let me get back to another point I wanted to make. In January of 2005, they did purchase a new car. It was listed on their country policy as being in Belleville, and Michael Skrabats was listed as the principal driver in Illinois. So, and again, they received a discount to have that on their policy, and he was covered. But a month later, when he has his accident in April-or, I'm sorry, in February of 2005, now they're taking the position, no, he's a Nebraska resident. So they get the $600 discount on the car in January of 2005 by saying he's an Illinois resident, but later on, when the accident happens in Nebraska, now he's a Nebraska resident. What I'm saying is you can't have it both ways. I mean, they made a decision. They wanted to keep their coverage the same, and it was the same, and he was covered in Nebraska under an Illinois policy, and receiving the discount and all the multifamily benefits and so forth on that policy. Under a conflicts of law analysis, isn't the fact that this accident occurred in Nebraska a major factor anyway? It's a major factor, but it's not the only factor. I mean, if that was the only factor, then why have all these other factors? Why just ignore everything else? I mean, just say have a bright line rule from the Supreme Court that says the location of the car, if the company knows where the car is, that's the location of the car. Nothing else means anything. That's the only criteria. I don't think that's what the cases say, Judge. Well, I understand that, but I mean, we can argue a toss-up here about what they knew about where the car was, but that doesn't change anything about where the accident occurred or that they knew he was in Nebraska and insured driving some car. Right. But what I'm trying to say is, I mean, people drive vehicles basically all over. I mean, we have the interstate highway system. People take trips. You can have an accident in a number of different states. But the policy that applies is the policy that's issued from Illinois, and that tells you how much coverage you have if you're going to make a U claim or a UM claim because that's the private contract you have with your insurance company. In terms of the other factors, I mean, to me they have some bearing on this because the cases say it's a number of factors that are to be considered. One might be important. There's no question about that, Your Honor. But it's not like just ignore everything else, and I think that's what the trial court did here is just ignore everything else because that's the only thing he said was, I'm basing it on the fact that they knew about it and that's what the car was, and that's the end of the story. If you look at the domicile of the insured and the insurer, Mr. Scrabb, and again the residency is both intent and permanency of abode, it's undisputed that, as Mrs. Scrabb had said, it was up in the air where they were going to live. He didn't want to be in Omaha. He was only there because his job transferred him there. The mail, the bills, auto, the Kia was never titled in Nebraska. He never had a Nebraska driver's license. Never even got any mail at that apartment in Omaha. There was no intent for him to live in Omaha. He never intended that. The family didn't want to be there. He was hoping to relocate. That's what Mrs. Scrabb had said. And again, country is obviously an Illinois company. The place of the last act giving rise to the contract, again, that's all Illinois. The premiums were paid there. The notices were sent there. All the mail was sent there. They couldn't even send him any mail in Omaha because he didn't get any mail in Omaha. Everything comes into Illinois. The place of performance. If he had a claim, if he had a MedPay claim or any other claim on the policy, they couldn't even pay it in Nebraska. They would have to pay it to Illinois because he didn't get any mail in Omaha. So all these other criteria, Your Honors, point to Illinois. They don't point to Nebraska. The only factor is Kia was in Nebraska at the time, and that's the only factor. And I recognize the significance of that. But here we have a situation where the insurance chose, as they said, to keep their insurance the same. And it's not a situation where country is denying this person saying, Well, you don't have any coverage at all because you're in Nebraska. He did have coverage, but it was coverage under an Illinois policy. And that's what they purchased, that's what they wanted, and that's what they got. I mean, to apply Nebraska to this, it just doesn't make a lot of sense when the intent of the insurance was to insure the vehicle on the Illinois policy and accept the benefits of the discount they got to keep all their vehicles in Illinois, even though it might not have been the most accurate situation with some of the younger people driving some of these vehicles maybe. But that's not something out of the ordinary for industry practice. This is a situation where the insurance company did everything that the insurers wanted them to do, gave them the discounts, listed the drivers in Illinois, because that's exactly what was requested of country. I just ask this Court to reverse the trial court and to find that Illinois law applies. Thank you very much. Thank you, Mr. Podeski. You'll get the opportunity for rebuttal, Mr. Subcheck. May it please the Court, I'd like to run through just a few facts. There aren't a whole lot of facts involved in this case, but just to make sure we have some of the chronology correct in this case, Michael Straubatz worked for Union Pacific Railroad as a customer rep for 30 years. So when the Union Pacific closes down its operation in St. Louis, Missouri and tells him, if you want to continue working for us, you move out to Omaha, Nebraska, he's wedded to that job. He's welded to that job. And so he moves out to Omaha, Nebraska. He moves out there in August of 2004. He lives out there for a couple of months and does not have a vehicle out there. He decides that, well, I need a car out here. And so Maureen Straubatz, his wife, calls this country company's agent, who is a captive agent of country companies, he's their agent, and tells him that this Mr. Wehmeyer, number one, Michael Straubatz has permanently moved out to Omaha, Nebraska, and number two, we're going to take this Kia automobile out there. She specifically told the agent she was going to take the Kia automobile out there and it's going to be permanently kept and garaged in Nebraska. She notifies the agent of that before she takes the vehicle out there and before this renewal policy is issued. So like it or not, country companies is bound by the knowledge of its own agent. In the first week of October of 2004, she then drives the Kia out to Nebraska and then might use the vehicle out there. October 20, 2004, this renewal policy is issued by country casualty and once again is issued with the company having the knowledge that Michael himself is permanently living out in Omaha, Nebraska, and that the Kia automobile is permanently going to be garaged in Omaha, Nebraska. The accident then happens on February 7, 2005, which is some three or four months after this renewal policy was issued, and he suffers serious injury. So that's the chronology on some of these facts. Now, Mr. Badesky has argued a number of times this morning that Michael Stravos didn't intend to live out in Omaha, Nebraska. I mean, there are no facts to back that up. That's just speculation. His employer told him he was moving out to Omaha, Nebraska. He moved out to Omaha, Nebraska. The record reflects that he was permanently going to live in Omaha, Nebraska. And country casualty was so informed. Yes, they didn't like the development that the family wanted. The thinking was, quote, perhaps, that, well, maybe if something else comes up, we'll try to move back here. But all of us have to do things we don't like from time to time. The facts in this case, which is all we have to go on, indicate that Mike was a permanent resident of Omaha, Nebraska as of August of 2004. He had taken no tangible steps to try to find other employment, to bid on another job anywhere else. And the plan was that after their two daughters graduated from school, they had one more year of school each, and that would have been in the spring of 2005, then Maureen and the two girls were going to move out to Omaha to be with their father. That was the plan. And I think the facts make it clear that he was permanently domiciled in Omaha, Nebraska. Now, the plaintiff and defendant, or the opponent and appellee, really don't disagree on what the black-letter law has to be applied here. It's the most significant contact test. But if you look at the list of things that the court may take into account, and those are enumerated in that Lapham-Hickey-Steele case, which is cited by the appellant, we can go down the list. If you look at the location of the subject matter, that's Omaha, Nebraska. The subject matter is the Kia automobile and Michael Straubatz. They're both in Omaha, Nebraska. The domicile of the insurer, clearly Michael Straubatz, Omaha, Nebraska. The place of performance of the contract. Now here, I think we need to go back to see what the knowledge of country casualty was. Once again, they had been notified he was in Omaha, Nebraska. This Kia automobile was going to be in Omaha, Nebraska. So this policy, the performance of this policy, the act, if you will, of insuring this vehicle, for one thing, they know is going to take place in Omaha, Nebraska. So I think that contact favors applying Nebraska law also. And then the court also said some other place bearing a rational relationship to the contract. Well, that's Omaha, Nebraska too. We have the accident happening there. We have the driver of the vehicle being a resident of Omaha, Nebraska. So my point is, Your Honors, that if you go down this list of significant contacts, most of them actually favor Omaha, Nebraska. And then if you put on top of that the string of case law that says that the location of the insured risk is to be given special emphasis and that it will be given greater weight than any other contact, well, then I think it's clear that the law of Nebraska should apply here. There's a case that we cite. There's a whole string of cases that stand for that proposition. One case, Society of Mount Carmel v. National Bank of Franklin, it's cited in our brief. That was a case where an underlying suit was found. It was a suit for wrongful discharge brought by a high school teacher who was working at a high school out in the state of California. The suit was brought against, I don't remember, an order of priests, I think it was, or a religious order that operated the school. But they were located in Illinois. The insurance policy involved was issued out of Illinois. Kind of a similar situation to this. And what was at issue in this Illinois case was the declaratory judgment suit filed by the insurer, this religious order, against its insurance company, both located in Illinois, arguing about whether there was a duty to defend the underlying wrongful discharge case. Well, in that case, the appellate court, the Illinois appellate court, applied California law to this proposition saying that the location of the risk, being this high school in California, was located in California, and that carried the day. And I think what we have in our case here, in the case of Barr, we have a much stronger case that the most significant contacts and the most significant state with regard to this particular incident is the state of Nebraska, ergo we think that the law of Nebraska should apply here. So if you look at the overall picture, Your Honors, I think the choice is either to pick the state where some clerk working in Bloomington, Illinois, happened to lick the stamp to mail the insurance policy, or look at the state where the accident happened, where the insurer was located, where the vehicle was located, all of the knowledge of the company, and all the rest. And we think it's clear that Nebraska law should apply here, and we're asking the court then to affirm the decision of the trial court. Thank you, Mr. Sedgwick. Mr. Badesky, you have rebuttal opportunity? Briefly, Your Honor, I thought we had an agreement, at least on one of the facts, and that's that there was no intent to live in Omaha. In fact, I'll cite to the record here, I asked Mrs. Scrabb, I asked why her husband never got a Nebraska driver's license. The guy's living out there for six months, the plan is for everybody to move to Omaha, but he doesn't get a license. Did he get a Nebraska driver's license? Answer, no. Question, okay, why not? He was not up for renewal. He did not plan. His intentions were not to be there. He was hoping to relocate, I should say, and that's at C-256-257 of the record. Mrs. Scrabb also says the goal was for the family intended to relocate to southern Missouri, and that's at C-257. There was no intention for the family or Mr. Scrabb to live in Omaha. He didn't want to be there. As explained, his job was there, so he went with his job. He wanted to transfer. There was no evidence anywhere on the record of an intent to actually establish permanent residency in Omaha. Didn't get any mail there, didn't get any bills there, didn't get a license, didn't title the car there. Absolutely nothing other than having to work there. Is there really an intent to permanently live in Omaha? Apparently not. I mean, he's not looking around for a house. He doesn't buy a house. He just gets an apartment because his intent was not to be there. So I think it's very clear that Mr. Scrabb was not a resident of Omaha when this accident happened. It is true, though, isn't it, that the risk that country companies insured went to Nebraska with their knowledge and consent. He's driving this vehicle. The risk that they're insuring something's going to happen while he's operating a vehicle or whatever under the policy, it was in Nebraska. Well, the risk was the whole family, though, Your Honor, because the whole family was in Illinois. I understand, but as to him, and of course that's what we're talking about here. Well, he was in Nebraska. I mean, the question is what law applies to this particular occurrence. Well, it's what applies to the policy, Your Honor. They're applying Nebraska law to an Illinois policy. The policy was issued in Illinois. The claim is being made under the policy. Right, but it's still applying Nebraska law to an Illinois policy, and that's the issue, I would say. Okay. You don't want to answer my question about whether the risk moved to Nebraska? The risk moved to Nebraska. All right. Thank you. To suggest that the only connection is a clerk in Illinois, I think that's not correct either. Again, the insurance policy was issued in Illinois at the intention of the insured to keep things the same. That's what the Scrabats wanted to do, and that's what they did do, and that's the coverage that they got under their Illinois policy that they paid the premium for was in Illinois because they didn't want to make any changes to their Illinois coverage until the spring of 2005. They wanted to keep it in Illinois, and that country went along with its insured's wishes here. That's all that happened. So, thank you. Thank you, Mr. Podeski, and Mr. Subcheck will take the matter under advisement and render a ruling in due course. We will stand and brief recess.